David CARROLL and Joan Carroll, his wife, Plaintiffs Below, Appellants,

v.

Armand F. SCATASTI and Anthony F. Scatasti, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: May 9, 1983.

Decided: June 16, 1983.

---

Robert K. Pearce, of Truzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for appellants.

Edwin A. Tos, Wilmington, for appellees.

Before HERRMANN, C.J., McNEILLY and CHRISTIE, JJ.

PER CURIAM:

David L. Carroll and John M. Carroll, his wife, plaintiffs in the original action, purchased a renovated row house in the city of Wilmington from Armand F. Scatasti and Anthony F. Scatasti, the defendants in the original action. In the Court of Common Pleas, the Carrolls sought to recover from the Scatastis expenses which they incurred in bringing the house up to Wilmington city code standards. The suit was based on theories of express warranty, implied warranty, and negligence. The judge of the Court of Common Pleas found these theories to have no support on the factual record. The Carrolls also attempted to recover under the pre-sale inspection provisions of the Wilmington city code. The judge of the Court of Common Pleas ruled that no warranty arose under the Wilmington code, and he entered judgment for defendants.

Plaintiffs appealed to Superior Court and that Court affirmed the decision of the Court of Common Pleas. The further appeal to this Court involves a second appellate review. The Carrolls now press only the arguments based upon 2 Wilm.C. § 34–17.[1]

In a well-reasoned letter opinion, the judge of the Superior Court analyzed the facts and the pertinent provisions of the Wilmington code. He observed that even when violations are uncovered, the buyer is entitled only to notice thereof—not a right to demand correction. Thus, liability is imposed under that section only when the vendor fails to comply with its specific provisions. *See also Tucker v. Crawford,* Del. Super., 315 A.2d 737 (1974).

This Court has considered the record and the briefs of the parties and finds itself in agreement with the Superior Court's ruling that "[w]here that inspection uncovers no violations, a seller satisfies the code by tendering a certificate of compliance to the buyer, notwithstanding the inaccuracies contained therein."

This sale of a renovated home was subject to the provisions of 2 Wilm.C. § 34–17(a) which provides, in effect, that a contract for the sale of real property located within the city shall include a copy of any outstanding notice or order issued by the commissioner of licenses and inspections citing violations of the city housing code. Only if there is a violation of this requirement is the seller conclusively deemed to

---

1. That section provides in pertinent part:

2 Wilm.C. § 34–17:

(a) Any person who sells or conveys any dwelling, dwelling unit, hotel or rooming house in the city shall include in or as a part of the agreement or instrument of sale a copy of any outstanding notice or order issued by the commissioner of licenses and inspections citing violations of the provisions of this chapter or of any rule or regulation adopted by the department of licenses and inspections for the enforcement and implementation of this chapter which has not been complied with. A seller or conveyor who violates or fails to conform to the requirements of this section, even if with the consent of the purchaser or transferee, shall thereby be conclusively presumed to have given his warranty that the property being sold or conveyed is in compliance with the provisions of this chapter and the rules or regulations adopted by the department of licenses and inspections for the enforcement and implementation of this chapter at the time and immediately prior to the sale or conveyance.

have given his warranty that the property is in compliance with the code.

In this particular case, the house in question had been inspected and a pre-sale certificate of compliance had been issued by city personnel. There were no outstanding notices of violations or orders to correct conditions. However, after the transaction was completed and the house was occupied by the Carrolls, the new heating unit was found to provide an inadequate amount of heat. It was repaired in part, and improved and replaced in part by the Carrolls at a cost of more than $2,000. The Scatastis appear to have failed to have had the heating unit inspected when it was installed, although another section of the code so requires. Thus, the pre-sale inspectors may have (mistakenly) relied on an assumption that an earlier inspection had taken place when they made what must have been a cursory inspection and certified that the house was free of code violations.

The Carrolls do not argue that the pre-sale inspection was a guarantee that there were no defects. Rather, they argue that the Scatastis' failure to secure the appropriate installation inspection resulted in an erroneous pre-sale inspection and, therefore, the Scatastis should be held to have warranted the property as if no pre-sale inspection had taken place. This argument would take the inspection requirements further into real estate contracts than is contemplated in the provisions of the code.

It certainly can be argued that if the pre-sale inspection had been more complete, pertinent code violations might have been uncovered. However, as the Superior Court found, the purpose of § 34–17 is to provide a buyer with notice of those code violations which happen to have been uncovered by

inspection. The pre-sale inspection was conducted in order to fulfill that purpose. No defects were found. Therefore, the requirements of § 34–17 were satisfied by the inspection and there is no reason to invoke its alternate remedy.

To nullify the pre-sale inspection because of a prior failure on the part of the sellers to comply with another, and independent, code section would be to transform that code notice section into a remedial provision, a result clearly not intended by the City Council. See § 34–17(d).[2]

This Court will not read the alternate limited warranty provision of § 34–17 into the sales contract here in question since the express provisions of that section were complied with.

*     *     *

The decision of the Superior Court is hereby AFFIRMED.

---

**2.** The relevant disclaimer appears at § 34–17(d):

(d) Nothing contained in this section shall be construed as any manner of warranty or guarantee by the city or by its agent, the department of licenses and inspections, that any particular property at any particular time fully complies with the provisions of this chapter and all rules and regulations adopted pursuant thereto or that any violations of this chapter and the rules and regulations adopted pursuant

thereto cited by the department of licenses and inspections are necessarily the only violations existing in or upon a particular property at any particular time or that corrections of violations of this chapter and any rules and regulations adopted pursuant thereto which have been cited by the department of licenses and inspections are necessarily full and complete corrections such that no other violations exist in or upon any particular property at any particular time.